Okay counsel, we've combined these two arguments in 20-1107 and 20-1188 and the counselor advised that this is a little more difficult than the normal course of business because you can't get visual cues from us. So I'd ask you to listen carefully for when a judge starts to talk to ask a question and and to stop what you're saying. You got that Ms. Gelman? Yes, thank you. Mr. Dinser? I understand, your honor. Okay, Ms. Gelman, you're serving five, I understand. Yes, that's correct. Okay, why don't you go ahead and start your argument. Thank you. May it please the court. The two cases that are before the court today both concern the ATF final rule banning bump stock devices. That rule required everyone who has lawfully purchased a bump stock to either destroy the bump stock device or abandon it at an ATF office. Ms. Gelman, this is Judge Wallach. I have a question and since we have some time I'm going to just go through. On page 23 of the red brief, the government says the Supreme Court has never held that a statutory prohibition on dangerous personal property as opposed to real property. That's my insertion. Is that a correct statement? Your argument argues, and we couldn't find anything, that the Supreme Court has never held that a statutory prohibition on dangerous personal property as opposed to real property constitutes a taking. Is that correct? I don't know of any Supreme Court case that holds that a prohibition on dangerous personal property is a taking. This is a fairly novel situation. Okay. Page 13 to 14 of the blue brief, you say that the Supreme Court's early police power cases were made in the context of, I'm quoting you, a mere diminution of property values. How does that square with Samuels v. McCarty? Samuels v. McCarty is one of those early cases that the Supreme Court in Lucas v. South Carolina has indicated were a group of cases that expressed the court's view on why the state may diminish the value of property. These cases do not apply to cases where all the property values are diminished. There are circumstances to it that make it inapplicable to this case. In that case, the setting of that case was that there was the option for the plaintiff to register so that he could sell the remaining alcohol that was in his stocks under the few limitations and he had not registered. So I view this case as one of the instances of a forfeiture for a failure to comply with an existing regulation. But that's a more specific answer to your question, but I think that the general answer is that in Lucas v. South Carolina, Justice Scalia explained that these cases cannot be late 19th century and beginning of the 20th century. This is Judge Toronto, can you just remind me, I don't mean to be petty, Justice Scalia was speaking for the court there, is that right, or was he speaking for less than the court? I believe he was speaking for the court. Okay, so the court said this, okay. Yes, so I think... On page 22 of the Blue Brief, you argued that the final rule, I'm quoting you, was not an exercise of police power because it was prompted by a change in policy, not by greater familiarity with bump stocks, and was obviously new legislation, not interpretation of statutory language. Didn't the shooting of all those people in Las Vegas not make the public and the government more familiar with bump stocks? I think, I want to answer your question as you asked it. Did the shooting in Las Vegas make the public more familiar with bump stocks? And the government. Certainly, yes, and the government. I believe it certainly did alert the public and the government to what a bump stock is capable of doing. I don't think that's the same as explaining, showing the government how a bump stock functions, and whether the way a bump stock functions would be in, it would fall under the statutory language of what constitutes a machine gun. It can't, it wouldn't possibly have said anything about that. It certainly wasn't. Wait, I want to run through a bunch of questions, so let me do this and we can get on. On page 23 of the blue brief, you argued that the Venice line of cases is inapplicable because the question here is only whether the appellants had the right to possess their bump stocks when they acquired title to them. That is, whether they were legal. Your theory of the law, if the government had not given your client an opportunity to surrender or destroy their bump stocks, if the government had waited for the final rule to become effective, and then seized their bump stocks as unlawful, would that still be a compensable taking? Yes, that would certainly still be a compensable taking. I think the point is that the public who owned bump stocks, when they purchased the bump stocks, the bump stocks were perfectly legal. So they acquired the entire bundle of property rights when they purchased those stocks, the right to possess, the right to use, the right to dispose. Wait, I want to keep your answers pretty short because I have a lot of questions. I'm sure the other judges do. On page 24 of the blue brief, you argue that we should align our reasoning with a since-abrogated Ninth Circuit opinion that held that an assault weapons ban was not a compensable taking so long as reasonable use of the regulated property existed. Now, you'd agree with me that an automatic weapon is less accurate than a single shot, would you not? I think that's correct. What's a reasonable use for a fully automatic weapon, other than, say, area denial in combat? I think that what our brief refers to when it speaks of use of property would not be a taking. So, for instance, a regulation that restricted the sale of bump stocks would not be a taking. It would have been legitimate for the government to say, you can't sell these anymore. That wouldn't take away the entire bundle of rights. Therefore, it wouldn't be a taking. Ms. Gelman, my question was, what's a reasonable use for a fully automatic weapon? And while you're at it, what's your cyclical rate of fire? Is it 650 per minute? I believe it's in the triple digits, but I can't be more precise than that. But a reasonable use could be a sporting use. I don't feel I'm not in a position to say what the full range of reasonable uses are. I think that there Okay. I've fired a fully automatic weapon in combat. One doesn't fire more than a three-round burst. You'll burn out the barrel. On page 30, note 8 of the blue brief, you say the final rule required that owners of bump stocks not only destroy their bump stocks, but also dispose, dispossess themselves of any remaining scrap. Why was that, if you know? I don't know the answer to that. Okay, I'll ask the government that then. Let's see. I have a lot more, but I'll see to my brethren. This is Joe Strano. Can I can I return you to the discussion of forfeiture kinds of matters, which as a factual kind of matter may be what Amerisource and Acadia are about, and some of the older cases in which, as I understand it, a person can acquire title to property, real property, personal property, maybe both, at a time at which it was perfectly lawful to do for which there is no compensable taking, such as, but not necessarily limited to, use even by somebody else in a criminal enterprise, perhaps also it becoming a back. Your Honor, you're correct that those are cases in which the owners of the property had a property interest before the property was taken from them. But this is a very narrow line of cases in which the seizure was part of the government's administration of our justice system. So, for instance, in Amerisource, the property, a specific piece of property, was seized as evidence in a criminal proceeding, used in the criminal justice procedure. In the Acadia case, property was seized because it was suspected of being in violation of U.S. law. In Tam Al-Amaz, property was seized because it belonged to a person who is specific seizure of a specific piece of property for the purpose of the administration of the criminal justice system. You might even say that in exchange for the benefit of having a working system of justice, we have all implicitly agreed that the state has a right to temporarily take a piece of property that is needed to administer justice. That almost inheres in the title of the property that we cede the right to the state to take property from us if it's necessary to continue this justice system. Right, that way of putting it, and I'm particularly interested in trying to understand cases, this inherent title notion, which has certainly played some role, at least in some of the older Supreme Court cases, like United States against Stowell and whatnot, seemingly having some relation to what at least used to be talked about as a background police power, when that phrase police power might have had a narrower meaning relating to health, safety, and morals than it has come to property was acquired when there were statutory prohibitions on machine guns, prohibitions that incorporated a certain measure of evolving implementation choices by the agency. The agency makes an implementation choice, and why should that not have the same effect as a title limitation being triggered as automatically effectively transferring the title away from, and the I'm going to think about that question for a moment. I think what your Honor is saying is that the existence of the statute banning machine guns should serve as a background principle that inheres in the title to a bump stock. Is that? Yes, I'm groping, so I'm not trying to be precise here because I think this is an area in which there are a lot of concepts floating around not very well organized or related to each other or precisely defined in a variety of case law at different levels, and so I'm trying to find one strand here which may fit with, which doesn't include this idea of dormant limitations in hearing in title that spring to life upon certain events and thereby legitimately allow the destruction or dispossession, as a better general word, of property without that being a compensable taking. Your Honor, what the Lucas court said is that there would have to be a pre-existing limitation on the property, an independent pre-existing limitation on the property. Now for the machine gun ban to serve as a limitation on the right of owner of a bump stock, it would be strange that over the course of some 10 years after bump stocks first began to be manufactured, the ATF issued letters assuring the public that bump stocks are not machine guns under the language of the statute. Now certainly the ATF is allowed to change its mind and that's there's so much discussion of the Aikens Accelerator in Greece, but where the Aikens Accelerator was concerned, the agency issued an interpretive ruling designating the Aikens Accelerator after the fact as banned by the machine gun ban. The significance of the interpretive rule is that an interpretive rule is principles and I wanted to refer to some language in the Lucas decision. The Lucas court said that a background principle that adheres in the title to property has to do no more than what could have been achieved by the courts. I think it's very different in this instance. Before the final rule was issued, there was no court that could have taken the bump stocks away from the people who owned them. Why couldn't a court, if the ATF had not been in the picture, have concluded that on its own application of the definitional language in the statute that bump stocks were in fact covered by the statute? Well, the ATF had issued letters for the 10 years prior to the final rule. Ms. Gelman, this is Judge Chen. Do those classification letters have the force and effect of law? No, they don't. They don't. I would look to what the the DC Circuit has decided in the Gatiss case about the nature of the final rule being a legislative rule. What the the DC Circuit did was analyze the language in the rule itself and the circumstances under which the rule was adopted to conclude that the agency intended this to be a rule that would have the force of law and would have prospective effects only. The language in the rule itself is very clear that bump stocks were not illegal before the final rule was passed. That it would have only prospective effect and the rule itself speaks of Chevron deference, which is the standard that is applied to legislative rules. I'm sorry, does the rule say besides invoking the Chevron framework we are acting and defending and invoking Chevron step two or does it say, does it ever say we actually think that this statutory language is ambiguous so Chevron step one doesn't resolve the matter we therefore have Chevron step two authority which we are exercising? It describes both steps of the Chevron treatment in detail. I'm sorry, is this in the final rule or is this the DC Circuit opinion you're referring to? This is what the DC Circuit's discussion of what's in the final rule. I'm sorry, but I didn't quite hear an answer to my question and I don't have the Federal Register materials with me. In the ATF announcement of its rule, does it say the statute is ambiguous for Chevron purposes and we are exercising our interpretive authority or our implementation authority under Chevron step two? I can't find a place in the rule itself where the Chevron rule is discussed, but the Chevron deference is discussed. Both steps of Chevron deference are discussed in the rule. This is part of why the DC Circuit concluded as it did that this was a legislative rule in part because the rule itself invokes Chevron deference and discussed in depth both steps of the Chevron deference, but there were other reasons as well. I mean it's the specific language of the rule denying that the ownership of bump stocks was illegal until the rule was passed and the statute. So for a plethora of reasons the DC Circuit concluded that this was unequivocally a legislative rule and not an interpretive rule and the significance of that of course is that bump stocks were fully legal when everyone who owns one before the rule was passed under the law, under the until the final rule was issued in its legislative capacity. That's tremendously significant for purposes of taking jurisprudence because it means that everyone who owned a bump stock had the full bundle of rights in their property and it was only the final rule itself that took all of those rights away from the people who had to either destroy their property or abandon it at an ATF office. That's why in our brief we've spent so much time discussing the significance of the legislative rule and explaining the difference between the legislative rule with respect to bump stocks and the treatment of the Akins accelerator because it in part explains the difference in the outcomes of these cases. Judge Chen, I'm trying to understand, I understand your pivot point between a so-called legislative rule and an interpretive rule and I'm trying to think through why should that matter. The statute that banning machine guns authorizes the government to enforce and also interpret that statute to ensure that devices that can convert a weapon into a machine gun are likewise outlawed. So I guess I'm trying to understand if that's all the government is doing then the government was authorized in making that interpretation whether you want to call it a legislative rule or an interpretive rule and purposes of disappeal we have to assume that that regulation is in Your Honor, I think that's absolutely right and that would be a very important point if our lawsuit were challenging the validity of the rule but it's not challenging the validity of the rule. Our lawsuit is only about whether this is a taking about whether the owners of bump stocks had property rights that were protected that were taken by the final rule and so for that purpose I think the distinction between a legislative rule and interpretive rule is highly significant because under one scenario the people who purchased bump stocks acquired property rights when they did so and under the other scenario they couldn't. Yes. Ms. Gelman? Yes. Can you hear me? Yes I can. This is Judge Wallach. I have a couple more questions for you and your time's running low. Okay. On page 18 of the red brief notes that in addressing a similar prohibition on bump stocks the emphasize that the principle that the government may ban hazardous materials without compensation is quote consistent with a long history of state laws that criminalize, ban, or otherwise restrict items deemed hazardous under the police power citing the regulation of machine guns, explosive devices, controlled substances, child pornography, fireworks, and lead-based paint. That's in Maryland Shell issue versus Hogan. When the government criminalized the possession of child pornography and quite a while ago now did it have to under your theory pay compensation to the pornographers who possessed it before it was illegal? Well there's a couple of a couple of aspects to that instance in which anyone did challenge as a taking any sort of limitation criminalization of child pornography. I think this is a question that would have to be resolved by looking at the state laws in effect and common law and whether this is regarded as a nuisance under common law because that of course would be a background principle that would limit anyone's property rights in anything including something that would be deemed child pornography. Would a machine gun be a nuisance? I think the government has admitted in its brief that bump stocks they found no law to indicate that bump stocks are a nuisance. I don't think machine guns could be a nuisance either. Machine guns of course were grandfathered in to the ban on machine guns. Many of them are still by people so that in itself I think suggests that it's not a nuisance. I don't think property itself is often a nuisance. I think it's ordinarily a use of property that's a nuisance. So my answer I think. One last question please. I we've exceeded your time but I'll let you keep your five minutes. On page 13 of the green brief the amici in support of the government say that RW arms engaged in bump stock sales even after the ATF announced its plans to adopt the final rule displaying a countdown clock on its website and sending promotional emails pointing to the impending ban. Is that correct? I believe it's correct that they did sell bump stocks before the rule was announced. I find that the amicus brief discussion of this interesting because I think it points to something rather different than the amicus brief identifies. It suggests that yes. Ms. Gelman. Yes I'm listening. Just tell me did they display a countdown clock and send promotional emails? That was my question. Yes I believe they did. Okay then let's hear from the government. Thank you your honor. This is Kenneth Benson. May it please the court. I'd like to go directly to some of the answers that were given in to Judge Tronto's and Judge Chen's questions about the bundle of rights because your honor there are no way that they can could have gotten the full bundle of rights here that they claim. The plaintiffs never own the property. To start with and this touches on what the court asked counsel they have no property interest in the ATF's letters. The letters offered a safe harbor but they were described as ATF official positions and counsel has acknowledged that they could change and they could not have had a property interest in those. I'm sorry I don't even understand what a property right in the of this equipment. Yes your honor they could not have had those let me let me print better your honor more clearly. They their property interests could not have been expanded or protected by those letters. Those letters were subject to change as ATF said and so those could not have created any of the sticks in the bundles of rights which meant that they could have been withdrawn at any time without there being a taking and the withdrawal of those letters two things happened that those letters were withdrawn and then a new rule was put in place but with the withdrawal of those letters alone left the bump stock subject to the always existing ban on machine guns. But Mr. Dinser this is Judge Chen I'm trying to understand what what is the purpose of the letters because right now the way you're characterizing them they almost sound like a mirage that nobody should have relied on and and but and I was under the impression that the letters are something that these owners these requesters for classification rulings are entitled to rely on them. I understand they you reserve the right to to change your rulings on on these matters but nevertheless if if I were to receive a clearance letter from ATF and that the bump stocks are in fact legal and not outlawed by the statute I I don't know what I'm supposed I think I could make an argument that now I've detrimentally relied on that classification letter that was reaffirmed over and over again for a decade and and only to have the rug pulled out from me a decade later. Respectfully your honor because those letters it not only not only the ATF handbook say that the letters were subject to change but... Do the letters exactly precisely say oh and we hereby reserve the right to potentially change our view of this matter? The letters didn't put it in the in the National Firearms Handbook where it authorizes the letters it says and I'm quoting here your honor classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in the law or regulation. What are you just citing? Do you have a site for what you just said? I do your honor that's that's the National Firearms Handbook that is used by ATF that that is the the ATF handbook that is the basis of their thing we're willing to give these out so so they let people know and then of course we had the example of Aikens it did in fact change so that that that all I'm saying with the fact that these these letters could not have given them bundled sticks in the bundles advice when they bought their if they understood that they weren't going to be prosecuted that ATF's take on it was that these weren't illegal but and if ATF had tried to prosecute them under the machine gun ban these would have of course thrown up and of course ATF or the DOJ or whoever tried to prosecute them would have lost but the withdrawal of these letters that itself is not it can't be a taken under cases like Mitchell Arms that those are just policy statements so what would you end up with is and this gets to Judge Toronto's question about in nearance what he neared into their ownership of these bump stocks was that the ban on 1986 preceded all of these bump stocks and what me it means is is that their bundle of rights and they did have bundle of sticks in the bundle but they were always subject to the prohibition of machine guns so can you can you address how what you just said fits with the DC circuits reasoning and was it was legislative versus interpretive I'm not sure that's the most significant thing in what the DC circuit said but it made it a rather large point of saying it was really quite important that possession before the date of the rule not be declared illegal yes you are so so I mean there's a lot to your questions are I want to make sure I get it all they did make this determination about legislative versus interpretive we disagree both with the plaintiff's citing of this as relevant to the analysis of taking or the analysis of the police power and whether that can be brought into play we don't think it has any relevance and on top of that we believe that this was properly deemed interpretive what let's assume we're not going to disagree with the DC circuit okay but even if you even if you don't disagree with the DC circuit what the DC circuit did was it cited National Mine Association with which had this quote those general descriptions do not describe tidy categories and are often of little help in particular cases so that's the point being this distinction legislative versus interpretive it's never been used in taking for the point is it never cited a case that has used this distinction in any way and we recommend especially since it doesn't provide nice tidy distinction that it not be transported over here where it really provides no use now what well here's your here I guess is it is is another attempt in precisely to try to express my worry I think that there's rather a lot to this notion of a limitation in hearing in title but that immediately raises the event that triggers the kind of the the the possessory illegality is an event that changes or merely applies a legal standard that in here to entitle and that makes me think that maybe it is rather important whether what ATF did here was legislative or interpretive or the like and you know to say this has never been used in taking law I will say is simply not helpful to me at the moment in trying to figure out how to make conceptual sense out of this so I'm really interested in help in making conceptual sense okay and I think I can do that your honor let's imagine for a second that ATF withdraws these letters and doesn't pass this rule okay so what we have then is we have a prohibition a statutory prohibition on machine gun and so then we have the potential that that ATF or DOJ or some federal officer arrest somebody for having a bump stock and says this should fall under the machine gun statute and the policy statements are the letters are no longer in existence and and they take this person into court and prosecute them and what we have from the plaintiffs and they admit on page 17 of the reply brief that enforcing the law is not a taking so putting aside that the new rule it would be okay under the plaintiffs acknowledgment if if we withdrew the letter which they did not create a property interest and we prosecuted these people without any notice and it wouldn't have been particularly fair but we prosecuted these people without any notice and we just prosecuted them under the statute that couldn't be a taking because the statute has existed since 1986 that's a new ring into this so that that is when we talk about this the bundle that in their sticks that they own they don't own the bundle that protects them from being prosecuted under that statute they could have answered it could have been found guilty all the rule did was interpret the statute and give people to be fair notice about when this is you know how this interpretation was going to be do you think that the analysis that you just articulated would change if in that prosecution the court said that as applied this was void for vagueness I'm sorry as applied what I missed the last word your honor as applied what that the firearm statute by itself was void for vagueness as applied or or that because of inherent uncertainties let's call them ambiguities I'm not sure that matters if they it would be interpreted by vert by reference to the rule of lenity not to apply I don't think it would matter your honor because the real question would be this if if the government started prosecuting people who owned bump stocks criminally the value of those bump stocks would be presumably I mean if the government started prosecution presumably the value would go close to or to zero and so unless the void for vagueness a rule of lenity rulings you know stock in which case the value would go right back up I I guess if that was ultimately you know adopted throughout the country but but I I don't think so your honor I think that I mean ultimately that the that there's two ways that I I think that that statute as written in yours its interpretation can be limited in which case its effect on their property rights could be limited and in that sense I guess I would have to acknowledge with the court that that but but whatever it was they didn't have the full set of sticks in the bundle they had something that was limited by the existing set and and we have to recognize that that people who are buying bump stocks were buying them so that they could simulate machine guns I mean there was there's no other use for these things other than to to to get as close to a machine gun as you possibly can the Aikens accelerator was already held to be illegal because it had a spring and tried to simulate a machine gun and so the the reality is is that I mean interpreting these as that should not have been a stretch so the new regulation all that did was interpret and say that that APS is going to interpret the the the automatic and the the trigger function to include bump stocks and and that was an interpretive process we believe that was an interpretive process and you did you did you have a can you answer the question I think I asked counsel on the other side about whether ATF in its final rule what exactly it said about Chevron step 1 and Chevron step 2 and in particular did it say the statute is ambiguous under step under Chevron step 1 and therefore we are exercising authority under step 2 at my understanding is your honor is that it mentions Chevron it does not indicate step 2 and what it announces and I'm quoting here is the quote best interpretation end quote of the statutory items so that that that is based on a quick look that's that's my understanding of what the regulation did okay thanks and and in fact the plaintiff site Gibson wine where the court offered this it offered this statement if you had an expression in a statute such as interurban railway the query might come up as to what is an interurban railway a particular agency may adopt a rule defining an interurban railway that in a sense may be called an interpretive rule and although the rule here did other things as well that the core of the rule here is they interpreted elements of what a machine gun and so with that I'm going to move on to police power and talk about why the police power here is he separate from the property interest issues the police power deceits the plaintiff's takings claim can I can I just impose pose the following like a concern I have about that so in kilo building on mid if and whatever Midkiff built on I think the Supreme Court has said we now understand the term police power to be essentially the same as public use which is essentially the same as public purpose if that's right then what all justices in kilo agreed with which is that something that is that a an action that is a taking that is not for a public use is actually illegal whether or not compensation unconstitutional whether or not compensation is is paid so how does this notion of police power if it is essentially equivalent to public purpose it serve as a happening of the government's authority to dispossess people of property without having to pay I think I think the case and other Supreme Court cases have been clear that there's no question that kilo describes the limitation that public use provides to the Fifth Amendment but that that case was not a case about the limitation of police power it was a question of what happens if you have eminent domain and you don't have public use that the public as the Venice case explained eminent domain is only one way that the government can acquire or in this case order the destruction of but but acquire individual in that case it was a car acquire individuals property and if the property is being acquired not under eminent domain but under police power then the limits under eminent domain it don't even apply so talking right but that's that that I guess is what what is is really puzzling me right Dennis and I think there's a marriage source at Acadia are cases that are either about something in here's entitled or about forfeiture customs cases where where you know there are background principles that make possession illegal and if you're at part of part of one of one of those background principles is is you know seizing property for evidentiary purposes in a criminal proceeding and that would be kind of a temporary one the customs one is long-standing background kind of border control what I am confused about is how it makes any sense as a constitutional matter to say the police power which at the federal level is you know the exercise of the commerce power or some other delegated constitutionally delegated authority for the public good how that doesn't how one could say that whenever Congress or an broad range of purposes it doesn't have to pay for property as long as it doesn't say we're not using the eminent domain power oh that's like it doesn't say we're using the eminent domain power I think so so I if it was just a label your honor that would be tremendously problematic I agree so I think that there's there's two things there's the there's the question of public use so it is the public I mean assume for these purposes that dispossession encompasses both seizure and and transfer either to the government or to some private party or destruction and I know you you the government keeps wanting to resist that but just assume for the purposes because I think that that's pretty much right under General Motors what I think so there is that question whether this was a physical taking or whether this is regulatory but putting that aside the ultimate the next question is is whether it's for destruction or if this case would be fundamentally different if the government demanded these bump stops and then distributed them to the army right then it would be for public use as opposed to getting them off the street there's a fundamental difference between those two things which is recognized in the horn case and and and and so that's the first question is and so what what did what does horn say about you must destroy this versus you must give it to us no no it says that it recognizes it says in acknowledging the variation in treatment between regulatory and physical taking when the result might be the same it says a physical taking of raisins and a regulatory limit on production may have the same economic impact on right but that's right but the difference between hand me your property and destroy your property it's really that one of them is a physical taking and one of them is not I this court actually addressed that in Roseacre and and in that case which mostly dealt with eggs was also the question of whether the they want the government wanted to test the chickens in the houses whether they had found this is that that single passing sentence citing a case that wasn't actually about that is that what you're going to I don't believe so I think this was an analysis by the court the court said and the plaintiff said look they're demanding our chickens so that they can kill them and test them for salmonella and that's a physical taking with the Roseacre court said what is clear is that had the regulations required Roseacre itself to kill and test the hens no per se taking could be fast right that's the sentence um that's what the cells are talking about yeah and then it's a case that doesn't support that sentence so I I'm not quite sure how much force to give to give to that you know actually hypothetical statement without without a supporting case but well let me go deeper to your honor on the distinction we believe because probably the truth is public police power is used in a variety of areas we believe that there are certain core police powers where there are and and I think Lucas they don't use this term but Lucas indicates that that there are some things that that that there is a public benefit even if it's incidental or but these corporate these core police powers which are the ability to outlaw something the ability to protect borders there's no economic benefit it's not you're not getting the benefit of nobody's getting the financial benefit when when mr. Campbell Mars's laptop was removed from him and ultimately broken and the files corrupted there was no such other person who was saying oh now I've got this economic benefit there was no transfer of that that that is at the core when you start looking at core core police powers the one so in our mind the police power can be used in two ways as far as considered it to it in the corporate power items it ends the analysis at that point and in camera mods in questions about about drugs about bringing in goods that are forgery that those are our core and that just ends the analysis in non-core areas where as you said it can come up any you know you can label anything police power under that comes in non-core areas then it should drop down to a Penn Central analysis and the character of the government taking and the investment backed expectations these things will look at the police power and the nature of so so help did try to define this better that there's some class of government compelled destruction orders or other possession is a crime pronouncement that you think are not do not constitute takings at all help just maybe maybe I missed I didn't hear it but define define this better for me it's and this is the distinction that Venice came up with where they said basically we're not there's no eminent domain being used here so we're not concerned if there's no economic benefit to the government if either in acquiring the goods or for example in the Lucas case it was you know if you stop somebody from building anything on their property we're gonna assume that there's an economic benefit to the neighbors to avoiding erosion to all these things if there's no economic when ecstasy was banned when when child pornography was banned it was not an economic benefit to you know to an identified class and you could come up with some hypothetical but that wasn't the point of it the point was not to create an economic on the other hand if you regulate somebody's apartment building so that so that people get to low-income housing the tenants get to stay there beyond what they you know in some sort of beyond beyond what they were contractually allowed to and those that the situation in Siena Garden then that's I mean that comes from the Commerce Clause but that's the kind of thing it needs to go to Penn Central analysis and in fact those acre which even even though it had potential of diseased eggs or the Yancey case which had you know chickens or turkeys that were potentially diseased those cases went to Penn Central analysis so the and I'm not saying it is this wonderful bright line I can draw for the court but what I can say is it's that the cases that are easiest are the cases and that would occur are the terms being banned from being outlawed it's not for the financial benefit of some group it's to it's to protect the health the safety and the like of the citizenry and that's why we have the this this police power that is separate from imminent domain it has nothing to do with eminent domains mr. do so yes your honor I have a few questions for you I want to start with what I asked your miss Gilman why did the ATF required dispossession of remaining scrap I don't I don't know that my my interpretation of that has always been that they didn't want people or they didn't want people taking things apart and keeping the pieces so that they could be put back together and so that I mean unless you're going to fuck so destruction destruction would be just taking it apart I think that my interpretation has always been and I would have to go back and check to see if they've defined these terms is that they didn't want to get into a question of how is this sufficiently destroyed enough and the like and by asking people to get rid of the scrap that prevents them from you know keeping it one because under the definition of machine gun you can't keep something sort of one step away from being a machine gun or machine gun part that's also illegal and so I took this to be to making sure that people weren't keeping this one step away from being a machine gun part or being a bump stock on on I want to turn and this is what piqued my interest go to your discussion of police powers and examples you gave let me give you a hypothetical suppose the FDA approved a drug for a particular important medical use and his patients are using it and it's keeping them alive but some years later the drug starts being used for a very dangerous recreational purpose could the FDA ban it entirely despite the continuing reliance of patients on the drug to keep them alive if you're asking me I can't answer that from an FDA point of view but let's assume that they can that they have the legal authority to ban it then if your question is would that result in that that the I mean one of presumably one of the responsibilities of FDA is to is to say you know these drugs are safe and these drugs are not and if they determine that a drug is not safe then that falls within core I mean there's no financial benefit that somebody's going to get it falls within core police powers they ban it it's not an eminent domain thing and now the contra what yeah please your honor is there any liability on the part of the government when those patients die under the I'm not an expert in this federal tort claim act but I would guess that there is not I would guess that that that this would be the type of thing where a regulated regulator has to make very difficult decisions about the health of the community and whether to authorize a ban it based on the big picture and but but what regardless of whether that liability exists which I don't believe it does it the people who have it in their in their in their bathrooms and on their shelves or their stores if it's banned for all purposes then it would not be a taking they would be obligated to washing down the toilet or whatever miss miss Gilman referenced that miss machine straight-up machine guns an m250 caliber can be possessed if there's a license am I correct that there's no licensing exception for bump stocks because they're all produced after 86 that is my understanding your honor yes that they are all banned I mean the bump stocks that are defined in the in the statute which are effectively all that I'm aware of are banned and there's no licensing available thank you turning to the the one one last comment about the police power that that even if you end up saying it's not a core police power it it should always end up in a Penn Central analysis and not in a per se analysis because of the nature of the case where it was because it was physical property with the court held with for physical for real profit for real property I'm sorry but who's real property for real property if you ban it a hundred percent it has moved a hundred percent of economic value then we're going to assume that there's some economic benefit flowing to the government and or the public and we're going to make that a per se taking but I think I think I I may be just asking you the same question but did either this concept of core police power or this concept of economic benefit lying behind a government action did either of those concepts appear in Supreme Court case law no your honor the concept of the core police power basically going through these cases and and trying to you do have like in the Acadia case you have the court recognizing that certain exercises of police power quote that they have repeatedly been treated as legitimate even in the absence of compensation so that this court has recognized that there are is this subset this group of police power that is enough to fit even without compensation at all you're done and then with other assertions of police power like as in Roseacre you need to go to the Penn Central analysis but no your honor this is sort of this is how we try to square the variety of statements that we understand that the different courts have made about police power and also just so that it corresponds with with the efforts I mean it in Keystone in Keystone the court described sort of the underlying theory of police power and why it exists and and basically it said that along with the concept of the nearing there's this sort of general concept that it nears to all property that anybody owns that it could be subject to the police power and so some things like dangerous drugs and dangerous weapons and and things that are being imported in the like those have I mean that the government's interest is much broader there and for health and safety reasons and and we believe that that that focuses on a core police power so just the last point on on Lucas if this court has from time to time indicated that if that Lucas make may apply to personal property as opposed to just real property we this is the only circuit that has said that we don't believe that that's consistent with Lucas and in the horn decision the recent Horn said most recent time that we're aware that the federal circuit has said this is an AMD the horn decision which came out after AMD made it clear that Luke that the limitations on Lucas are still good law that it's only for real property with a hundred economically worthless that personal property that Luke and I'm quoting horn quote Lucas recognized that while an owner of personal property ought to be aware of the possibility that the new regulation might even render his property economically worthless so that is the Supreme Court's most recent statement on this and we believe and the Fourth Circuit in Maryland shall issue reach the same conclusion is that for personal property such as the bump stop that that there is no per se rule and that you have to if they survive the police power which we don't think they should and if they have the property right I'm sorry and and and that that would be even for mandatory disposition dispossession as a as opposed to a use or sale restriction yes your honor yes that's that even if the government actually went in and took them which we don't believe that they did but if physically said bring us your your bump stocks that that they that that would that Lucas would not would not prevent that from would not require that from from going to a per se analysis and but I mean that this was a regulatory action and and it should be judged under Penn Central and with that unless the court has any other questions we ask the court to affirm the holdings of both of the trial courts in dismissing the complaints as failing to state thank you mr. thank you thank you all for your time and attention thank you miss Gellman yes I just would like to make a couple of points the first is about the government's position that the letters didn't create any property rights for the owners of bump stocks it was never our contention that the letters created a property right the property rights came about simply by virtue of the purchase of a consumer product there was no law in place there was no reason why the owners of bump stocks wouldn't have the full bundle of rights in the bump stocks that they purchased there was nothing in the machine gun ban that applied to the bundle of rights at that time when the government speculates that it would have been possible to take someone to court and prosecute under the machine gun ban that's pure speculation and in fact the legislative rule that that the agency that the ATF chose to bring about the final rule through a legislative rule is highly indicative that the agency itself understood that the machine gun ban standing on its own would not be sufficient in a court in order to prosecute someone for owning a bump stock that's just beside the point that they wrote letters stating that they did not believe that it covered bump stocks so the bundle of rights that we have that owners had in these bump stocks had nothing to do with the letters coming out that's simply a confirmation of what the ATF view was before they made a policy decision that bump stocks ought to be regulated by the machine gun ban now I want to point out something about the use of this expression to the the core police powers this is not an expression that's used in takings law in fact this is the very distinction that the Lucas court said is not permissible the distinction between a regulation that results in some benefits and one that prevents some harm these are just the same size they're two sides of a single coin and the Lucas decision tells courts that that cannot be the determining factor in deciding how to deal with a categorical taking but the term core police powers when it comes up at all I googled it on West law it's only with respect to what powers do the states have in comparison to what powers to the does the federal government have and so you will see that expression at times in these early Supreme Court decisions that address takings law because the issue there was that it was a state regulation and it was a largely a due process claim but that's not a takings principle and there is no recognition of a core police power exempting government action from a takings analysis where there's where all of the rights in property have been taken away and I assume you disagree with the government's characterization of horn as reiterating the observation in Lucas about personal property in so far as the government says that horn applies that to dispossession as opposed to a regulation of use the government is totally incorrect the only thing that Lucas said is that unlike land where personal property is concerned it might not be sufficient that the government has taken away all economic value it's really just a reiteration of what the Supreme Court said in Andrews v. Allard where the owners of eagle feathers and other bird parts of protected birds could no longer be sold well in that case the Supreme Court said you still have possession and this is therefore not a taking it's you know it's reasonable regulation in that you are no longer able to sell that you know it I think that the most you can say Lucas says and that horn reiterated is that if the owner of a person of personal property has all rights taken away except the right to possession that is likely a very difficult takings case but that's not our case in our case possession was taken away all rights were taken away and I think that the the the words in horn that that that most indicates how this case should be decided is that the corn case said that whatever Lucas had to say about reasonable expectations with regard to regulation and this is a quote people still do not expect their property real or personal to be actually occupied or taken away now with the understanding that the Supreme Court has viewed your property being taken away as your rights being destroyed in it we take the point of view of the owner of the property not the point of view of the government the horn decision is saying yes you can expect reasonable regulation reasonable restrictions on the use of your private property and it might even mean you no longer have any economic use of your private property but you'll get to keep it and I think that my time is up thank you very much for hearing argument today thank you thank you both counsel this matter will stand submitted